IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FILED
DEC 08 2009
TIMOTHY M. O'BRIEN, Clerk
By_____ Deputy

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,               )
                                )
vs.                              )   Case No. 09-mj-8175-JPO
                                )
                                )
MIGUEL ANGEL MENDOZA-HERNANDEZ  )
                                )
        Defendants.              )
                                )

# CRIMINAL COMPLAINT

I, Special Agent Andrew Zumhofe, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.

## COUNT ONE

On or about December 2, 2009, in the District of Kansas, the defendant,

### MIGUEL ANGEL MENDOZA-HERNANDEZ

knowingly possessed with intent to use unlawfully and possessed with intent to transfer five or more identification documents not issued lawfully for the use of the defendant, that is, United States Permanent Resident Alien Cards, which false identification documents appeared to have been issued by and under the authority of the United States.

This was all in violation of 18 United States Code Section 1028(a)(3).

## COUNT TWO

On or about December 2, 2009, in the District of Kansas, the defendant,

### MIGUEL ANGEL MENDOZA-HERNANDEZ

knowingly possessed a document-making implement, that is, an HP Pavilion computer and HP Deskjet 6988 inkjet printer with the intent that said document-making implement would be used in the production of a false identification document, and the document-making implement is designed or suited for making an identification document that appears to be issued by or under the authority of the United States.

This was in violation of Title 18, United States Code, Section 1028(a)(5).

I, Andrew Zumhofe, affiant herein, being duly sworn, state and aver:

1. Affiant is a Special Agent employed by the Department of Homeland Security, Immigration and Customs Enforcement (ICE). My duties involve investigating violations of federal law, executing arrest warrants, making arrests without a warrant, executing search warrants and seizing evidence and assets related to violations of federal law. I have been employed with the federal government since November 5, 2007. I received 20 weeks of specialized training at the Federal Law Enforcement Training Center in Glynco, Georgia, with nine weeks of Basic Criminal Investigator training and 11 weeks of ICE Special Agent Training. I have been involved in numerous narcotics/smuggling, benefit fraud, child pornography, human smuggling and worksite enforcement investigations. My duties also include the identification and tracing of proceeds and assets purchased with proceeds of illegal drug trafficking and human smuggling. I have also been involved in investigations of individuals who manufacture and sell fraudulent Unites States identification documents.

2. On November 5, 2008, Confidential Informant (CI) SA-179-KC provided the ICE Office of the Assistant Special Agent in Charge (ASAC) Kansas City with the telephone number of 913-375-8295, and information pertaining to an unidentified male that was allegedly manufacturing and selling fraudulent United States documents in the Kansas City area. (This unidentified male was later identified as RTM). SA-179-KC stated this document vendor was capable of producing Social Security cards and Resident Alien cards.

3. On February 25, 2009, ASAC Kansas City conducted a document purchase with the target of a fraudulent document investigation.

4. At approximately 1654 hours, the target of the investigation was observed as he met with Confidential Informant SA-168-KC. SA-168-KC

and the target were observed as they exchanged money and biometric information for the production of fraudulent documents.

5. At approximately 1657 hours, ASAC Kansas City agents followed the target vehicle continuously to 431 Cambridge Street, Kansas City, KS. At approximately 1659 hours, the target was observed sitting in his vehicle out in front of the residence. At approximately 1702 hours, the target was observed as he exited the vehicle, walked up the sidewalk and placed something into the mailbox near the front door of the residence. At approximately 1703 hours, the target got back into his vehicle and departed the area. While agents set up a continuous surveillance on the target, one agent remained to maintain observation of 431 Cambridge Street.

6. At approximately 1730 hours, Special Agent Lovesee, the agent who maintained surveillance at 431 Cambridge Street, reported that he had an employee of the United States Postal Service look into the mailbox at the residence. He advised the postal worker that there may be photographs and/or identifying information contained in the mailbox. The postal worker reported to SA Lovesee that she believed she saw photographs wrapped inside of a 2x2 inch piece of notebook paper located in the mailbox.

7. At approximately 1746 hours, Special Agent Lovesee reported that a blue Ford Explorer had arrived at 431 Cambridge Street bearing the license plate WVP747, KS. This vehicle was later identified as a blue Lincoln Navigator. The driver of this vehicle got out and walked up to the mailbox. Special Agent Lovesee stated this male appeared to grab something out of the mailbox. (Note: It was getting very dark around this time making it difficult to identify individuals and events). The driver then got back into his vehicle and departed the area. Special Agent Lovesee initiated surveillance and followed this vehicle to the Waterstone Apartments, 1100 County Line Road, Kansas City, KS. Special Agent Lovesee broke contact with the vehicle since it turned down a dead-end in the apartment complex. Subsequent records checks revealed this vehicle was registered to **Miguel Angel MENDOZA**, 1108 County Line Road, #19, Kansas City, KS.

8. At approximately 1756 hours, Special Agents Zumhofe and Covarrubias arrived at the Waterstone Apartments and set up surveillance on the Lincoln Navigator. Special Agent Zumhofe observed the Lincoln Navigator (WVP747, KS) parked in front of the "1108" building, near the door which annotated units "13-24." At approximately 1810 hours, Special Agents Zumhofe and Covarrubias passed the surveillance of the Lincoln Navigator off to Special Agent Lovesee and traveled back to 431

3

Cambridge Street.

9. At approximately 1915 hours, myself and Special Agent Covarrubias observed a white vehicle arriving at 431 Cambridge Street. The driver, who appeared to be male, exited the vehicle and appeared to go to the front landing of the residence, where the mailbox was located. The driver then left the front landing area, got into his vehicle, and departed the area. Myself and Covarrubias initiated surveillance on the vehicle in order to identify it. The vehicle was a white Nissan Altima bearing the license plate of XUW979, KS. Subsequent records checks revealed this vehicle was registered to **Miguel Angel MENDOZA**, 1108 County Line Road, #19, Kansas City, KS. Myself and Covarrubias returned to 431 Cambridge Street to continue stationary surveillance.

10. At approximately 2207, the target arrived back at 431 Cambridge Street. Special Agent Lovesee reported that the driver appeared to go to the front landing, but did not enter the residence. The driver got back into the vehicle about one minute later and departed the area.

11. At approximately 2211 hours, a vehicle driven by the target arrived at Taqueria Mexico, 3300 Rainbow Boulevard, Kansas City, Kansas and parked in the north section of the parking lot. At approximately 2214 hours, SA-168-KC arrived at Taqueria Mexico and parked in the southwest corner of the parking lot. The vehicle was then observed driving over to where SA-168-KC had parked. The target met with SA-168-KC where they exchanged the remaining money for the documents. SA-168-KC asked the target for his name and the target responded with "Javier." At approximately 2217 hours, the meeting was over and the target left the Taqueria Mexico.

12. At approximately 2223 hours, the surveillance was concluded.

13. At approximately 2225 hours, Myself and Special Agent Covarrubias met with SA-168-KC at a pre-determined location to retrieve the purchased documents and the technical surveillance equipment.

14. The following documents were purchased by SA-168-KC, collected by myself and stored into evidence:

    U.S. Permanent Resident Alien Card, I-551
    Alien Registration Number A096 XXX 319
    Name of Miguel GEMINIS-Garcia

    U.S. Permanent Resident Alien Card, I-551
    Alien Registration Number A038 XXX 688

4

       Name of Adriana VALENCIA-Camacho

       U.S. Social Security Card
       Social Security Number XXX-XX-7312
       Name of Miguel GEMINIS-Garcia

       U.S. Social Security Card
       Social Security Number XXX-XX-8211
       Name of Adriana VALENCIA-Camacho

15. A further check through ICE databases of the Immigration I-551 cards bearing Alien Registration A096 XXX 319 and A038 XXX 688 purchased from the document vendor, revealed the numbers were issued by the Department of Homeland Security, but they were both assigned to other individuals.

16. A check of the Social Security Card purchased from the document vendor bearing SSN# XXX-XX-7312 through Special Agent Bruce McKimens with the Social Security Administration, Office of Inspector General, revealed that the number was valid and had been issued to an actual person. A check of SSN# XXX-XX-8211 revealed that the number was not valid and had not been issued.

17. On December 2, 2009, at approximately 0630 hours, Special Agent Jesse Stoker, ICE, ASAC, Kansas City, Missouri and five additional agents went to the address of 1108 County Line Road, Apartment 19, Kansas City, KS and conducted a knock and talk at the residence in an attempt to gain consent to search the residence. Special Agent Stoker was met at the door by **Miguel MENDOZA**, who after being shown identification and told the agents were Special Agents with ICE, granted ICE Special Agents entry into the residence. Special Agent Stoker asked MENDOZA whose name was on the lease of the apartment, which he replied he was on the lease. Special Agent Stoker then advised MENDOZA that there had been allegations of drugs and fraudulent documents at this apartment and asked for MENDOZA'S consent to search the apartment. MENDOZA declined to grant consent at this time.

18. Special Agent Stoker asked MENDOZA and the two other individuals found in the apartment if they were legally present in the United States in which all replied that they were illegally present in the United States and had no authorization to work or reside in the United States. MENDOZA and the two other individuals were arrested on administrative charges for being illegally present in the United States. At this time the agents conducted a protective sweep of the residence. A small child determined to be the daughter of MENDOZA was found asleep in MENDOZA'S bed in the back bedroom of the apartment. The mother of the child was contacted and came to the apartment and took custody of the child.

19. During the protective sweep, agents observed in plain sight a computer, scanner and what was believed to be a lists of names on the computer desk in the bedroom of MENDOZA, along with several other boxes of unknown items but in the shape of business cards or card stock. When agents entered the bedroom, the closet door was partially open and in plain view agents were able to see two small stacks of laminate on the top shelf of the closet as well as an iron and a digital camera. On the floor in the bottom of the closet in plain sight was a box for a printer and a lamination machine as well as the identification card of a white male who did not reside in the residence.

20. MENDOZA and A.G. (one of the other individuals who resided in the apartment and was also arrested for administrative immigration violations and who owned the second computer in the living room of the apartment) were advised by Special Agent Mark King that they had the option to give agents consent to search their computers or agents would attempt to get a search warrant for the computers belonging to them. MENDOZA and GOMEZ both agreed to sign consent searches for the computers.

21. The computer belonging to MENDOZA was identified as an HP Pavilion Slimline, Serial Number MXU832041P.

22. Based on the items seen in plain view during the protective sweep, the apartment was secured by agents pending application for search warrant.

23. On December 2, 2009, I received a Search Warrant for the premises of 1108 County Line Road, Apartment 19, Kansas City, KS. This warrant was signed in the District of Kansas by the Honorable David J. Waxse at approximately 1535 hours. At approximately 1545 hours, ICE Special Agents Jesse Stoker and Jonathan Polner executed the search warrant. At approximately 1555 hours, Special Agents Jose Covarrubias, Kenneth Lovesee, Zachary Bulman and myself arrived at 1108 County Line Road, #19, to assist in the search warrant execution

24. The following items were seized by myself, logged and stored into evidence:

- Brother Electric Typewriter Model GX-6750
- Three blank Social Security cards located in the typewriter roller
- HP Deskjet 6988 Inkjet printer
- Box of laminate paper
- Two sheets of Social Security card templates
- Four bags of miscellaneous documents
    - some of these documents contained names, Social Security numbers and dates of birth on them
- Belkin wireless adapter
- Four Fargo Smartload ribbon cartridges
- Polaroid izone 550 digital camera

6

- Samsung Sprint cellular phone model SPH-M620
- Box containing blank identification cards
- Ten sheets of blank Social Security card templates
- Eight separate blank Social Security cards
- Box containing 125 various State and Federal identification cards, at least five of which appear to be United States Permanent Resident Alien Cards
- G4010 HP Scanjet Scanner
- Magnicard Magnifying glass with light
- Carl paper cutter and paper scorer
- GBC Heatseal Laminator
- Fargo Photo Identification printer
- Eight miscellaneous photographs
- Three removable microdisk storage media
    - A forensic analysis of these media revealed 21 images containing frontal views of individuals
- Paper perforator

25. At approximately 1730 hours, ICE Special Agents completed the execution of the search warrant at 1108 County Line Road, #19, Kansas City, KS. I secured the residence with the apartment key, and cleared the scene.

26. On December 3, 2009, Special Agents Jose Covarrubias, myself, Tim Ditter and Kenneth Lovesee interviewed Miguel MENDOZA-Hernandez at the ICE Kansas City Office. MENDOZA-Hernandez had been arrested and detained by ICE after his initial encounter on December 2, 2009 at the Waterstone Apartments, located at 1108 County Line Road, Apartment 19, Kansas City, KS. MENDOZA-Hernandez was found to be unlawfully present in the United States and was placed into removal proceedings. He was processed under A089 905 044 and Enforce event number XKC101200007.

27. MENDOZA-Hernandez was advised by ICE Agents that they wished to speak to him about the events on December 2, 2009 and a subsequent search of his apartment. SA Covarrubias provided MENDOZA-Hernandez a copy of his Miranda rights in the Spanish language which he read aloud and signed. After reading his Miranda rights and signing the Miranda rights, MENDOZA-Hernandez agreed to speak to the agents. MENDOZA-Hernandez stated his true and complete name was Miguel MENDOZA-Hernandez and that he was a citizen of Mexico. MENDOZA-Hernandez stated he sometimes uses the alias or nickname of "Zage." He claimed that he arrived in Kansas City during July 1999 in search of employment. MENDOZA-Hernandez remained in the Kansas City area until February or March of 2008. During this time period, he moved briefly to the State of Washington in search of employment. MENDOZA-Hernandez also obtained a drivers

7

license while living in Washington State. After a brief stay in Washington, MENDOZA-Hernandez returned to Kansas City and moved into the Waterstone Apartments, and had an address of 1108 County Line Road, Apartment 19, Kansas City, KS. MENDOZA-Hernandez moved in with friends and continued to reside at the residence until his arrest.

28. MENDOZA-Hernandez stated he currently has been unlawfully employed at a tire shop named the Durango Tire Shop, in Kansas City, KS. MENDOZA-Hernandez said he is paid in cash by his boss who had a first name of Orlando (LNU). He has worked at the shop for approximately three months.

29. Agents then advised MENDOZA-Hernandez that a federal search warrant executed on his apartment had revealed a number of items which evidenced a fraudulent document manufacturing operation. Agents also advised MENDOZA-Hernandez these items were found in the back bedroom of the apartment where MENDOZA-Hernandez's personal belongings were found.

30. MENDOZA-Hernandez stated he began helping a friend to make counterfeit identification around July 2008. MENDOZA-Hernandez claimed the friend, who he would identify only as "primo," did not live in the apartment with him. His friend just left Kansas City last week for Washington State. MENDOZA-Hernandez claimed his friend would routinely come to the apartment and they would manufacture U.S. Resident Alien cards, U.S. Social Security cards, Mexican Government identification, State of Missouri Temporary Registration Permits, and State identification cards from Texas, Missouri, and Kansas. MENDOZA-Hernandez stated he charged people between $60.00 to $80.00 for each identification card and $20.00 for each temporary registration tag. MENDOZA-Hernandez further claimed he made approximately 10 to 12 documents per week which earned him about $700.00 cash.

31. Agents then asked MENDOZA-Hernandez to explain how people would find him to request the counterfeit documentation. MENDOZA-Hernandez claimed people called his cell phone which he provided as 913-961-6363. The phone plan was Verizon. Agents then pointed out that a number of small pieces of paper were found in the bookcase which had names, dates of birth, and Social Security numbers. MENDOZA-Hernandez said he was aware of those pieces of paper and that people who wanted to buy documents, would provide him with, or he would ask for, a Social Security number, date of birth, and a name. MENDOZA-Hernandez said he never created a Social Security number

8

for someone or provided a Social Security number that he knew to be valid. MENDOZA-Hernandez did, however, create the alien registration numbers on the U.S. Resident Alien cards he made.

32. Agents then asked MENDOZA-Hernandez to explain why past surveillance operations identified a "drop box" operation near Cambridge Avenue in Kansas City, KS. Two vehicles registered in his name were observed arriving at a residence on Cambridge Avenue, Kansas City, KS, where an individual appeared to go to a mailbox and retrieve/drop off identification information. MENDOZA-Hernandez stated he did use the mailbox outside an apartment on Cambridge Avenue on four or five occasions. According to MENDOZA-Hernandez, he had a friend who used to live at the Cambridge address and the friend allowed him to use the mailbox as a "drop box" operation. MENDOZA-Hernandez did not identify this friend.

33. Agents then asked MENDOZA-Hernandez where the computer in his bedroom came from and who purchased the additional equipment. MENDOZA-Hernandez stated he bought the computer and printer during December 2008. MENDOZA-Hernandez thought he bought the machine for $1,300.00 cash at Office Max. Agents then asked MENDOZA-Hernandez if he bought the machine to specifically manufacture documents and he said that he did. MENDOZA-Hernandez further stated he designed the cardboard box which the printer rested in. The cardboard box was designed so that card stock could be fed through a door on the box and into the printer. After the printer completed the card, it could be taken out of the printer through a similar small door on the box.

Further your Affiant sayeth not.

Andrew Zumhofe
Special Agent
Immigrations and Customs Enforcement

Sworn to before me and subscribed in my presence this 8th day of December, 2009 at Kansas City, Kansas.

UNITED STATES MAGISTRATE JUDGE
District of Kansas

9

Penalties:
    Ct. 1: 18 USC 1028(a)(3): NMT 15 years imprisonment; NMT $250,000.00 fine; NMT 5 years supervised release; $100.00 special assessment

    Ct. 2: 18 USC 1028(a)(5):  NMT 10 years imprisonment; NMT $250,000.00 fine; NMT 3 years supervised release; $100.00 special assessment